REQUESTED BY: Dear Senator:
In letters dated March 31, April 1, and April 4, 1977, you have asked this office several questions regarding your amendments to LB 64 and your amendments to those original amendments. Your amendments as we read them would provide for a sentence of not less than 30 years nor more than 90 years with no provisions for parole or good time sentence reductions as set forth in sections 83-1,107 and83-1,107.01, R.S.Supp., 1976. As we understand your questions, you seek advice on whether or not your amendments are first of all constitutional and secondly, whether or not your amendments would have the effect of keeping an individual convicted of first degree murder incarcerated for at least a minimum term of 30 years.
Preliminary to discussing the specific questions you have raised is the necessity to discuss two prior opinions of this office. The first opinion is Opinion of the Attorney General No. 189, Report of the Attorney General 1975-1976, dated March 3, 1976. In that opinion this office was asked to discuss the constitutionality of certain amendments relating to the death penalty. Those amendments provided for a mandatory death penalty in certain cases and provided for the imposition of life imprisonment without the possibility of parole after conviction of certain crimes, none of which involved treason or impeachment. In that opinion we came to the conclusion that the provisions providing for the imposition of life imprisonment without possibility of parole after conviction would be difficult to defend constitutionally.
The second opinion that is necessary to discuss is the Opinion of the Attorney General No. 23, dated February 22, 1977. In that opinion we discussed certain proposed amendments that would provide for a sentence of not less than 30 nor more than 90 years for each count upon which a first degree murder conviction was had and provided that there would be no provision for parole on that sentence. Our opinion concerning that amendment reasons that the amendment would not as a practical matter be any different than the current law under which a first degree murderer who received a sentence of life imprisonment is deemed to not be eligible for parole until such time as the Board of Pardons, in exercising its constitutional authority, commutes his life sentence to either a determinate number of years or an indeterminate sentence, the minimum of which may be used to calculate parole eligibility. We further concluded in that opinion that we did not believe that the establishment of a 30 to 90 year sentence without parole for persons convicted of first degree murder was unconstitutional class legislation.
In attempting to answer your most recent questions concerning your amendments the provision of the Constitution which must be focused upon is Article IV, section 13. That constitutional provision reads in part:
 ". . . Said board, or a majority thereof, shall have power to grant paroles after conviction and judgment, under such conditions as may be prescribed by law, for any offenses committed against the criminal laws of this state except treason and cases of impeachment. . . ."
In Opinion of the Attorney General No. 189, 1976, it was reasoned that since Article IV, section 13 of the Constitution of Nebraska provided that the Parole Board `shall have power to grant paroles after conviction and judgment, under such conditions as may be prescribed by law, for any offenses committed against the criminal laws of this state except treason and cases of impeachment . . .' that the exception of treason and cases of impeachment from parole eligibility implied the exclusion of all other categories of crimes not fairly incident to those enumerated. That is to say, that since the Constitution provided that persons convicted of treason and cases of impeachment were not eligible for parole, that all other cases involving criminal convictions must be eligible for parole. It is now apparent that an equally plausible analysis of Article IV, section 13 is that the framers of the Constitution did not intend the exception for treason and cases of impeachment to be a grant of parole to all other persons but intended it to be a restriction upon the Legislature's power to set such conditions for parole. Put more plainly, Article IV, section 13 could be interpreted to allow the Legislature to establish conditions for parole as it desired except in the cases of treason and impeachment. Therefore, following that interpretation, the Legislature could have the power to create conditions relating to parole no matter what the offense except for those cases enumerated in the Constitution, those being treason and cases of impeachment. We feel this latter analysis of Article IV, section 13 is legally defensible and while we cannot categorically say that it is correct, we would endeavor to defend such an interpretation before the courts of this state should the need arise.
Your first specific question as to the amendments to LB 64 is whether or not those amendments and amendments to the amendments would be constitutional. In light of the discussion above we cannot categorically say that those amendments are constitutional but we do believe that the second analysis of Article IV, section 13 discussed above is a plausible legal defense that could be used should your amendments be attacked as unconstitutional.
Your second specific question as to the amendments to LB 64 is whether or not your amendments would have the effect of keeping an individual convicted of first degree murder incarcerated for at least a minimum term of 30 years. It is our opinion that the amendments if sustained as constitutional would, subject to the power of the Pardon Board, guarantee that the person convicted of first degree murder would serve a minimum of 30 years in prison. The amendments would provide first of all that no person convicted of first degree murder and sentenced to a term of 30 to 90 years would be eligible for parole. Secondly, your amendments provide that the provisions of sections 83-1,107 and83-1,107.01, R.S.Supp., 1976, shall not apply to an individual convicted of first degree murder. These two statutory sections are commonly called the `good time' laws. These laws affect both eligibility for release on parole and the date when an inmate's discharge from the custody of the state becomes mandatory.
Section 83-1,107 provides that the chief executive officer of a facility shall reduce for good behavior the term of a committed offender. The reductions for good behavior are deducted from the inmate's minimum term to determine the date of his eligibility for release on parole. The reductions for good behavior are deducted from the maximum term to determine the date when an inmate's discharge from the custody of the state becomes mandatory. In addition to these two deductions, section 83-1,107.01, R.S.Supp., 1976, provides that an offender shall receive for faithful performance of his assigned duties a further reduction. That reduction is deducted from the maximum term to determine the date when his discharge from the custody of the state becomes mandatory. Your amendments would eliminate these reductions from both the minimum term for the purpose of determining parole eligibility and from the maximum term for the purposes of determining the date when an offender's discharge from the custody of the state becomes mandatory.
The practical effect of your amendments would be to eliminate indeterminate sentencing in first degree murder cases. This effect is demonstrated by the hypothetical indeterminate sentence of 30 to 90 years imprisonment. Since reductions from the minimum term for parole eligibility have been eliminated, the minimum term of 30 years would serve no purpose. Since the deductions from the maximum term have been eliminated, the inmate's discharge from the custody of the state would only become mandatory at the expiration of the full 90 years. Therefore, the indeterminate sentence of 30 to 90 years is in reality a flat sentence of 90 years. It follows from the above hypothetical that any sentence given a convicted first degree murder under your amendments would result in a flat sentence wherein the person convicted would serve the total sentence, subject to the power of the Pardon Board to commute that sentence.
We assume that the intent of your amendments is to assure that a person convicted of first degree murder will be incarcerated for a minimum of 30 years. While this end may be accomplished in several ways other than those that you have proposed in your amendments, we do feel that your amendments, if sustained as constitutional, would, subject to the power of the Pardon Board, result in that end.